Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| BELKIS DÍAZ NIEVES, SONIA DÍAZ NIEVES Y ANDRÉS DÍAZ NIEVES<br><br>Demandante - Apelados<br><br>v.<br><br>LUIS ROBERTO GÓMEZ OLAYA Y LUIS ALBERTO VÁZQUEZ RODRÍGUEZ<br><br>Demandados – Apelantes | TA2025AP00461<br><br><br><br>consolidado con | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil núm.: BY2018CV04823<br><br>Sobre: Sentencia Declaratoria |
| BELKIS DÍAZ NIEVES, SONIA DÍAZ NIEVES Y ANDRÉS DÍAZ NIEVES<br><br>Demandante - Apelantes<br><br>v.<br><br>LUIS ROBERTO GÓMEZ OLAYA Y LUIS ALBERTO VÁZQUEZ RODRÍGUEZ<br><br>Demandados – Apelados | TA2025AP00478 | |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de febrero de 2026.

A raíz de una disputa entre vecinos, y luego de un juicio (incluidas dos vistas oculares), el Tribunal de Primera Instancia ("TPI") ordenó a una de las partes modificar lo construido en la colindancia y condenó a la otra parte a pagar compensación por los daños causados por un desagüe. Según se explica en detalle a continuación, concluimos que procede la confirmación de la sentencia apelada, al no haberse demostrado que el TPI hubiese cometido un error de derecho o un claro error en la apreciación de la prueba.

I.

En diciembre de 2018, los hermanos Belkis, Sonia y Andrés, todos de apellidos Díaz Nieves (los "Demandantes"), presentaron la acción de referencia, sobre sentencia declaratoria (la "Demanda"), en contra de sus vecinos, los Sres. Luis Roberto Gómez Olaya y Luis Alberto Vázquez Rodríguez (los "Demandados").

Los Demandantes alegaron que eran propietarios, por herencia, de un inmueble ubicado en el núm. 8 de la Calle Degetau ("Lote 8") en el municipio de Bayamón (el "Municipio"). Explicaron que sus progenitores adquirieron el Lote 8 en 1941 y que, desde la década de los años 50 del siglo pasado, los tres pisos del edificio allí construido son de cemento. Destacaron que los linderos y la descripción de su finca y del edificio que alberga no han variado durante todo ese tiempo.

Sostuvieron que los Demandados obtuvieron el predio contiguo al suyo, identificado con el núm. 6 de la calle Degetau (el "Lote 6"), mediante compraventa efectuada con el Municipio, quien lo obtuvo por expropiación en el caso *Gobierno Municipal de Bayamón v. Sucesión de Primitiva Martínez, sobre Expropiación* (KEF2014-0129) (la "Expropiación").

Afirmaron que, el 19 de mayo de 2018, los Demandados construyeron, sin consultarles previamente, una verja de cemento y metal en el frente de su propiedad, y que con dicha construcción los privaron de acceso a una franja de terreno que originalmente separaba las propiedades. Explicaron que la construcción tuvo el efecto de convertir "en medianera" la pared de su edificio que colinda con la propiedad de los Demandados.

En vista de lo anterior, los Demandantes solicitaron que el TPI declarase que, al construir la verja frente a su propia residencia, los Demandados invadieron parte del Lote 8.

Además, solicitaron que se ordenara a los Demandados a devolver el área afectada de la colindancia al estado en el que se encontraba antes del 19 de mayo de 2018.

En febrero de 2019, los Demandados contestaron la *Demanda* e instaron una *Reconvención*. En síntesis, negaron las alegaciones en su contra y destacaron que la verja frente a su residencia fue construida dentro de los linderos de su propiedad y conforme a derecho. Añadieron que no existía prohibición alguna para construir la verja y que no era necesaria la anuencia de los Demandantes, según confirmado por la certificación del 29 de enero del 2019, suscrita por el Ing. Víctor A. Joglar Díaz, Oficial de Permisos de la Oficina de Permisos del Municipio. Enfatizaron que no han alterado la cabida y los linderos del Lote 6, adquirido del Municipio. Añadieron que el Municipio les entregó copia de los planos de su propiedad que reflejan la colindancia correcta entre los inmuebles y que, en todo caso, eran terceros registrales. En cuanto a la pared del edificio de los Demandantes, aseveraron que no era medianera porque estaba totalmente ubicada dentro de la propiedad de estos y tenía ventanas en el segundo piso.

En la *Reconvención*, los Demandados alegaron que los Demandantes abrieron un hueco a modo de desagüe rústico en la parte superior de su propiedad y que dicho desagüe inundaba su patio cada vez que llovía. Explicaron que la gran cantidad de agua que baja por el desagüe socavó el patio y le ha ocasionado daños a su residencia. Reclamaron $25,000.00 por concepto de los daños materiales ocasionados por el desagüe, más $10,000.00 por concepto de angustias y sufrimientos mentales.

Los Demandantes contestaron la *Reconvención*; negaron causarle daños materiales o personales a los Demandados.

Alegaron que entre las dos propiedades siempre existieron sistemas de desagüe.

Luego de algunos incidentes procesales, en abril de 2021, los Demandantes enmendaron la *Demanda* para incluir otra construcción no autorizada, esta vez de una plataforma de cemento que realizaron los Demandados en su patio y que adosaron a la pared norte (colindante) del edificio de los Demandantes. Los Demandados utilizan dicha plataforma para colocar unos tanques de metal. Alegaron que el Lote 6 nunca estuvo demarcado o dividido por verja, pared o muro y que sus puntos de colindancia no estaban definidos. También aseveraron que no se les brindó oportunidad de participar en el procedimiento de expropiación del Lote 6, con el fin de deslindar y fijar los puntos de colindancia entre ambos predios.

En septiembre de 2021, los Demandados instaron una *Demanda Contra Tercero* para traer al pleito al Municipio. En esencia, alegaron que adquirieron el Lote 6 del Municipio, con unos linderos y cabida definida, y sin que nunca se les dijera que existía una franja de terreno de diecisiete (17) pulgadas entre los predios. Aseveraron que, de ser ciertas las alegaciones de los Demandantes, el único responsable era el Municipio.

El Municipio contestó la demanda contra tercero. De entrada, sostuvo que la cabida y los linderos del Lote 6 no fueron alterados o variados en forma alguna. Añadió que la colindancia sur de dicha propiedad era la pared del edificio de los Demandantes y que dicha pared no es medianera debido a que está totalmente ubicada dentro de la propiedad de estos. Destacó que el plano preparado por el Agrimensor Ismael Ortega Arroyo, que se hizo formar parte del expediente de la acción de expropiación, no reflejaba la existencia de una servidumbre o franja entre los predios de las partes. Enfatizó que, al momento

de la compraventa del Lote 6, se les entregó a los Demandados una copia de un plano con las colindancias claramente definidas.

En abril de 2022, mediante una *Sentencia Parcial,* el TPI desestimó la *Demanda contra Tercero* por dejar de exponer una reclamación que justificara la concesión de un remedio.

El 29 de septiembre de 2023, el TPI celebró una vista ocular[1]; el juicio en su fondo se celebró los días 2, 3, 4 y 10 de octubre de 2023. El TPI luego realizó otra vista ocular (20 de octubre de ese mismo año).[2]

El 2 de mayo de 2025, el TPI notificó una *Sentencia* mediante la cual declaró *No Ha Lugar* la Demanda y *Ha Lugar* la *Reconvención.* El TPI concluyó que, entre las propiedades, no existe una franja de terreno o servidumbre. Además, reconoció los daños reclamados por los Demandados.

A raíz de una moción de reconsideración de los Demandantes, el 18 de julio, el TPI notificó una Sentencia Enmendada (la "Sentencia"). Se aclaró que la pared del Lote 8 no es medianera, por lo cual los Demandados deberán coordinar con los Demandantes cómo permitirán que estos últimos le den mantenimiento a la referida pared. El TPI determinó que la verja construida por los Demandados no podrá descansar en la pared del edificio de los Demandantes. Asimismo, ordenó a los Demandados modificar la plataforma de cemento adosada a la pared de los Demandantes para que la plataforma tampoco descanse en dicha pared.

De la Sentencia surge que las partes estipularon las siguientes determinaciones de hechos:

> 1. Los demandantes son dueños en común proindiviso de una finca ubicada en el casco urbano de Bayamón cuya descripción registral, según la

---

[1] Véase, *Minuta Acta,* Entrada 167 de SUMAC.
[2] Véase, *Acta de Inspección Ocular,* Entrada 168 de SUMAC.

Escritura Núm. 90 de 24 de abril de 1941, sobre Compraventa e Hipoteca es:

"Urbana: Casa con su solar, midiendo aquella once y media varas de frente por veinticinco varas de fondo, y éste doce y media varas de frente por veintiocho varas de fondo, radicada en la Calle Puerto Rico antes, hoy Degetau, del pueblo de Bayamón, de altos y bajos, aquellos de madera y éstos de mampostería, techada de zinc y marcada en el día de hoy con el número once, y colinda por el Este, su frente con la Calle Degetau; por derecha entrando, Norte, con casa de Don Antonio Santos antes después de Doña Mariana Pascual y hoy de Doña Mariana Pascual y hoy de Doña Juanita Bitter por la Izquierda, Sur, con otro que fue de Don Jaime Mimoso, Antes, hoy de don Pablo Lavandero; y por su fondo, Oeste, con solar que fue de Doña Carmen Aranzamendi antes, después de Don Félix Pérez y hoy del Doctor Morales Ruiz." Consta inscrita al folio diecisiete (17) del tomo Cuarenta y tres (43) de Bayamón, finca # 25 duplicado, Inscripción décima primera".

2. La descripción registral histórica de la finca de los demandantes, en particular, respecto a su cabida, extensión y límites, no ha variado desde su inmatriculación. Las medidas están expresadas en varas.

3. La escritura de compraventa mediante la cual los demandados adquirieron su propiedad es la Escritura Núm. 4, de 20 de febrero de 2017, otorgada ante el Notario Público, Arnaldo Iván Fernandini Sánchez. De la misma surge la siguiente descripción:

"Urbana: Solar radicado en la Calle Degetau número seis (6) de la ciudad de Bayamón, Puerto Rico, compuesto de una extensión superficial de 218.0552 metros cuadrados. En lindes por el Norte, con Solar número cuatro (4) de Juan Ríos Colón; por el Sur con Solar número ocho (8) de Andrés Díaz; por el Este, con Calle Degetau; y por el Oeste, con Solar cincuenta y siete (57) de la Familia Olazábal." Consta inscrita al folio setenta y siete (77) del tomo Doscientos sesenta y seis (266), finca doce mil setecientos Noventa (12,790) Bayamón III.

4. La descripción histórica registral de la finca que adquirieron los demandados varió, en cuanto a cómo aparecía inscrita en el Registro de Propiedad cuando fue adquirida por su anterior dueño, el Municipio, mediante sentencia dictada en el caso de Gobierno Municipal Autónomo de Bayamón Etc. v. Sucesión Primitiva Martínez Parza, Civil Núm. KEF2014-0129, del Tribunal de Primera Instancia, Sala Superior de San Juan, sobre expropiación forzosa. La descripción que el Municipio incluyó en la demanda original de expropiación fue la siguiente:

"Casa con solar en la Calle Puerto Rico, que da entrada al pueblo de Bayamón por la Carretera de Cataño, construida de madera techada de zinc, de altos y bajos. Colindante por el Norte que es su derecha, con Manuel Ginorio, hoy su Sucesión; por el Sur, que es su izquierda, con José Cobián hoy su sucesión dando frente a la Calle por el Este y hacia el fondo, con terrenos de Carmen Arizmendi."

5. Cuando los demandados tomaron posesión del solar y de la estructura que les pertenece, no existían verjas, muros ni vallas.

6. Los demandados construyeron dos verjas frente a su solar. Una de ellas colinda directamente con la acera de la Calle Degetau. Uno de los extremos de ambas verjas está pegado al edificio que pertenece a los demandantes.

7. Los demandados solicitaron autorización de los demandantes para adosar, con carácter provisional, a la pared norte del edificio de los demandantes, una verja de madera que, según informaron al codemandante Andrés Díaz Neves, tendría carácter provisional.

8. Los demandados son dueños del predio de terreno descrito en la alegación número 16 de la demanda, a saber:

"Urbana: Solar radicado en la Calle Degetau número seis (6) de la ciudad de Bayamón, Puerto Rico, compuesto de una extensión superficial de 218.0552 metros cuadrados. En lindes por el Norte, con Solar número cuatro (4) de Juan Ríos Colón; por el Sur con Solar número ocho (8) de Andrés Díaz; por el Este, con Calle Degetau; y por el Oeste, con Solar cincuenta y siete (57) de la Familia Olazábal." Consta inscrita al folio setenta y siete (77) del tomo Doscientos sesenta y seis (266), finca doce mil setecientos Noventa (12,790) Bayamón III. Surge de los libros del Registro de la Propiedad que la antes referida compraventa se verificó mediante la Escritura #4, otorgada el 7 de febrero de dos mil diecisiete (2017), sobre Compraventa y Constitución de Hogar Seguro, ante el Notario Público, Lcdo. Arnaldo Iván Fernandini Sánchez.

9. El Municipio Autónomo de Bayamón adquirió la finca que posteriormente compraron los demandados, mediante pleito de expropiación forzosa, de 18 de agosto de 2014, fecha en la que se presentó la petición de expropiación en el caso del *Gobierno Municipal Autónomo de Bayamón vs. Sucn. Primitiva Martínez Parza,* Caso Núm. KEF 2014-0129 (1003).

10. La estructura dedicada a vivienda que hoy ocupan los demandados ya estaba construida en el solar al momento en que la adquirieron.

11. La descripción histórica de la propiedad que expropió el Gobierno Municipal de Bayamón en el Caso Núm. KEF 2014-0129 es:

"Casa con solar en la Calle Puerto Rico, que da entrada al pueblo de Bayamón por la Carretera de Cataño, construida de madera techada de zinc, de altos y bajos. Colindante por el Norte que es su derecha, con Manuel Ginorio, hoy su Sucesión; por el Sur, que es su izquierda, con José Cobián hoy su sucesión dando frente a la Calle por el Este y hacia el fondo, con terrenos de Carmen Arizmendi."

12. La descripción del inmueble que aparece en la escritura de Hogar Seguro e Hipoteca de la propiedad que adquirieron los demandados es también la que aparece en el párrafo número ocho, supra.

13. Los demandantes Andrés Díaz Nieves, Sonia Díaz Nieves y Belkis Díaz Nieves se convirtieron en titulares de la finca y del edificio enclavado en la misma, localizados en la Calle Degetau Núm. 8, mediante herencia de sus padres y causantes, Sixta Nieves Rosado y Andrés Díaz Moure.

14. Los nombres de los demandados son Luis Roberto Gómez Olaya y Luis Alberto Vázquez Rodríguez, quienes son mayores de edad y tienen capacidad para demandar y para ser demandados. La dirección residencial y postal de ambos es Calle Degetau Núm. 6, Bayamón, Puerto Rico, 00961.

15. En o para el 2011 el agrimensor Ismael Ortega Arroyo fue contratado por el Gobierno Municipal Autónomo de Bayamón, para medir la propiedad y para levantar un plano del solar localizado en la Calle Degetau, Núm. 6, de Bayamón, Puerto Rico.

16. El plano levantado por el agrimensor Ortega Arroyo fue utilizado por el Municipio en la acción judicial seguida para la expropiación forzosa del solar localizado en la Calle Degetau Núm. 6, Bayamón, Puerto Rico, en el caso de *Gobierno Municipal de Bayamón v. Sucesión de Primitiva Martínez Parza,* sobre Expropiación Forzosa, Civil Núm. KEF2014-0129, presentado el 18 de agosto de 2014 y bajo el mismo fue investido de título el Municipio.

17. Toda la información que utilizó el agrimensor Ortega Arroyo para preparar el plano, incluso la relacionada con los colindantes del Solar Núm. 6, le fue suministrada por un funcionario del Gobierno Municipal de Bayamón, de nombre Alvin Álvarez. El Sr. Alvin Álvarez falleció.

18. Para preparar el plano, el agrimensor Ortega Arroyo no citó ni habló personalmente con los colindantes cuyos nombres aparecen señalados en el mismo, que son: los miembros de las sucesiones de Andrés Díaz Moure y Sixta Nieves Rosado; los

miembros de la Sucn. Olazábal; los miembros de alguna otra sucesión o persona con interés o; del Lcdo. Juan Ríos Colón, quien no había fallecido para la fecha en que se hizo el plano.

19. En el plano que preparó el agrimensor Ortega Arroyo del Solar Núm. 6 no aparecen, ni están las firmas de los colindantes antes mencionados o de sus representantes.

20. El agrimensor Ortega Arroyo no corroboró con los colindantes del Solar Núm. 6, ni con sus herederos, la información que le suministró el Sr. Alvin Álvarez, funcionario del Gobierno Municipal de Bayamón.

21. Según la información que el Gobierno Municipal de Bayamón le brindó al agrimensor Ortega Arroyo a través de sus funcionarios, el titular del Solar Núm. 6 era la Sucesión de Primitiva Martínez.

22. Para preparar el plano que le encargó el Gobierno Municipal de Bayamón, el agrimensor Ortega Arroyo no se comunicó con ninguno de los miembros de la Sucn. de Primitiva Martínez.

23. Para la fecha en que el agrimensor Ortega Arroyo hizo el plano del Solar Núm. 6, desconocía que la descripción registral histórica de la finca no incluía una cabida definida.

24. Según alegado por los demandados en la contestación a la demanda enmendada, "No es medianera la pared del edificio de los demandantes, ya que la pared no se comparte entre las dos propiedades, sino que a tenor con los planos y escrituras hasta esa pared llega la propiedad y linderos de los demandados".

Asimismo, en la *Sentencia,* el TPI formuló las siguientes determinaciones de hechos:

1. Las colindancias del predio perteneciente a la parte demandada se extienden desde el punto fijo 236 al punto fijo 136 por el este; del punto fijo 236 al punto fijo 137 por el sur; del punto fijo 137 al punto fijo 250 al punto fijo 138 por el oeste; y del punto fijo 136 al punto fijo 138 por el norte, según se desprende el plano sometido por el MAB en el caso *Gobierno Municipal Autónomo de Bayamón Etc. v. Sucesión Primitiva Martínez Parza,* Civil Núm. KEF2014-0129. En otras palabras, no hay espacio de terreno ni pasillo que separe la propiedad de la parte demandante de la propiedad de la parte demandada.

2. La pared del inmueble propiedad de los demandantes que colinda con los demandados por el lindero norte no era ni es medianera.

3. La parte demandada construyó la verja en controversia dentro de los límites de cabida que establece el Registro de la Propiedad, conforme al derecho propietario que adquirieron al comprarle el inmueble al MAB. Sin embargo, dicha verja está adosada a la pared de los demandantes.

4. La plataforma de cemento construida por los demandados en la parte de atrás de su residencia se encuentra dentro de los linderos de su propiedad. Sin embargo, dicha plataforma está adosada a la pared de los demandantes.

5. La parte demandante abrió un hueco en la parte superior de la pared de su propiedad y que queda contigua a la propiedad de la parte demandada.

6. Dicho hueco es una especie de desagüe rústico que ha inundado y continúa inundado el patio de la parte demandada cada vez que llueve.

7. Las acciones de la parte demandante mencionadas en los incisos 3 y 4 de la presente sección han provocado que la parte demandada haya incurrido en gastos para mitigar los daños.

8. Los daños materiales provocados por la parte demandante ascienden a la suma de $20,000.

9. Los daños por concepto de angustias y sufrimiento ascienden a la suma total de $10,000.

El TPI concluyó que los Demandados ocuparon el predio de terreno según les fue vendido por el Municipio, de acuerdo con los linderos y dentro de los límites consignados en las escrituras y planos suministrados por dicho ayuntamiento. Asimismo, resolvió que, en la acción de expropiación del Lote 6, no se incluyó servidumbre alguna entre las propiedades de las partes. Por consiguiente, estableció que no había espacio de terreno o pasillo entre las propiedades.

Por otro lado, el TPI determinó que los Demandantes respondían por los daños causados a los Demandados al instalar el desagüe, que, si bien fue realizado en la pared de su propiedad, cada vez que llovía ocasionaba inundaciones en el patio de los Demandados. El TPI le impuso a los Demandantes el pago de $20,000.00 por concepto de daños materiales y $10,000.00 por concepto de angustias y sufrimientos ($5,000.00 por cada

codemandado). De conformidad, el TPI declaró parcialmente con lugar la *Demanda Enmendada* y ha lugar en su totalidad la *Reconvención*.

Inconformes con el resultado, el 30 de julio, los Demandados presentaron una *Moción de Reconsideración a Sentencia Enmendada*.

Mediante una *Resolución* notificada el 24 de septiembre, el TPI denegó la solicitud de reconsideración de los Demandados. En igual fecha, el TPI dictó una *Resolución* mediante la cual le concedió a los Demandados la suma de $1,441.80 por concepto de costas y gastos del pleito.

En desacuerdo, el 22 de octubre, los Demandados instaron uno de los recursos de referencia (TA2025AP00461); formularon los siguientes señalamientos de error:

> 1. Erró el Tribunal de Primera Instancia, Sala Superior de Bayamón, al enmendar su sentencia original, al declarar HA LUGAR parcialmente la demanda incoada por la parte Apelada, al concluir, que la verja y/o el muro construido, así como la plataforma de cemento construida por la Apelante, en la parte de atrás de su residencia, descansan en, o están adosadas, en la pared propiedad de la parte Apelada.

> 2. Erró el Tribunal de Primera Instancia, Sala Superior de Bayamón, al enmendar su sentencia original al declarar HA LUGAR parcialmente la demanda incoada por la parte Apelada, al ordenar la modificación de la verja y/o el muro construido, así como la plataforma de cemento construida por la Apelante, en la parte de atrás de su residencia.

Por su parte, el 24 de octubre, los Demandantes interpusieron el otro recurso que nos ocupa (TA2025AP00478); formularon los siguientes señalamientos de error:

> PRIMER ERROR
> Erró el TPI al dictar la Resolución de 16 de julio de 2025 y la Sentencia enmendada de 15 de julio de 2025 que no resuelven la totalidad de las controversias planteadas en la demanda enmendada, específicamente sobre cómo los demandantes han de ejercer sus derechos propietarios sobre la pared Norte del edificio de su propiedad, cuya pared, como cuestión de hecho no

es una pared medianera y sobre la franja de terreno ente el Solar Núm. 8 de los Apelantes y el Solar Núm. 6 de los Apelados.

## SEGUNDO ERROR

Erró el TPI al atribuir a los demandantes responsabilidad por no haber realizado los esfuerzos necesarios para ser incluidos como parte con interés en el caso de *Municipio Autónomo de Bayamón v. Sucn. Primitiva Martínez et. al.*, K EF2014-0129, para oponerse a que la franja de terreno que discurre a lo largo de la colindancia Norte del Solar Núm. 8, propiedad los Apelantes y la colindancia Sur del Solar Núm. 6, propiedad de los Apelados, y que la misma pertenece a los Apelados.

## TERCER ERROR

Erró el TPI al concluir que no existe una franja de terreno más allá de la pared no medianera que les pertenece, contrario a lo publicado por el Registro de la Propiedad, tanto en cuanto a las dimensiones de la estructura y del Solar Núm. 8, con el resultado de privar a los Apelantes de dicha franja de terreno sin el debido proceso de ley.

## CUARTO ERROR

Erró el TPI al declarar ha lugar la demanda de reconvención presentada por los Apelados y al resolver, sin que se haya presentado prueba de daños conforme a derecho, que los Apelantes causaron daños y perjuicios materiales y sufrimientos a los Apelados.

## QUINTO ERROR

Erró el TPI al conceder a los Apelados el pago de costas y gastos conforme la Reglas 44.1 de Procedimiento Civil.

Luego de que consolidáramos los recursos, y se presentara la transcripción estipulada de la prueba oral, se presentaron los alegatos en oposición.  Resolvemos.

## II.

La expropiación forzosa es concebida en nuestro ordenamiento jurídico como el poder soberano que reside en el Estado para adquirir el dominio de una propiedad sita dentro de sus límites territoriales. Véase, *Administración de Terrenos de Puerto Rico Recurrido v. Corporación Pesquera Henares, Inc.*, 201 DPR 14 (2018), citando a Cynthia Torres Torres, *La expropiación forzosa en Puerto Rico (2003)*, a las págs. 1-4.  Por tanto, el poder de expropiación forzosa es la facultad del Estado para adquirir

propiedad privada para fines públicos que surge del poder inherente que tiene el gobierno para establecer restricciones sobre la propiedad. *Mun. de Guaynabo v. Adquisición M2*, 180 DPR 206, 216 (2010); *Autoridad de Tierras de P.R. v. Moreno Ruiz Developer Corp. et al.*, 174 DPR 409, 425 (2008); *E.L.A. v. Registrador*, 111 DPR 117, 119 (1981). Así, la facultad de expropiación es de superior jerarquía, posicionándose sobre los derechos propietarios de los ciudadanos. *Administración de Terrenos de Puerto Rico Recurrido, supra*. Véase también *ACT v. 780.614m²*, 165 DPR 121, 130 (2005); *ELA v. Registrador*, 111 DPR 117 (1981); *ELA v. Rosso*, 95 DPR 501, 536 (1967).

Sin embargo, el ejercicio de dicha facultad tiene límites constitucionales que protegen contra actuaciones abusivas o arbitrarias por parte del Estado. *Administración de Terrenos de Puerto Rico Recurrido, supra*; *Mun. de Guaynabo*, 180 DPR a la pág. 229. A esos fines, la Sección 7 del Artículo II de la Constitución de Puerto Rico consagra el derecho al disfrute de la propiedad. Véase Art. II, sec. 7, Const. ELA, 1 LPRA, Tomo 1. Además, la Sección 9 del Artículo II de nuestra Constitución limita el poder soberano del Estado al establecer que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, sec. 9, Const. ELA, 1 LPRA, Tomo 1. Las únicas limitaciones que pueden reconocerse a esta facultad del Estado son que la propiedad se dedique a un uso o fin público y se le satisfaga al demandado una justa compensación por ella. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 425 (2008); *M. Mercado e Hijos v. Tribl. Superior*, 85 DPR 370 (1962).

Así pues, cuando el Estado o entidad designada pretenden adquirir la propiedad de una persona mediante dicho poder

inherente, tienen que seguir el procedimiento dispuesto en la Ley de Expropiación Forzosa de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901, *et seq.*, y la Regla 58 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 58; *Administración de Terrenos de Puerto Rico Recurrido, supra*; *Mun. de Guaynabo, supra*; *Autoridad de Tierras de P.R., supra*.

La citada Ley de Expropiación confiere jurisdicción a la Sala Superior de San Juan del Tribunal de Primera Instancia sobre "[t]odas las acciones o procedimientos de expropiación forzosa". 32 LPRA Ap. V, secs. 2905 y 2914. Dispone, además, que tan pronto el Estado o una de sus instrumentalidades presenta una declaración de adquisición, conforme los requisitos de ley, y consigna la compensación estimada, la entidad gubernamental que solicitó la expropiación queda investida del título de dominio sobre la propiedad. 32 LPRA sec. 2907; *Municipio de Guaynabo*, 180 DPR a la pág. 217; *ACT v. Iñesta*, 165 DPR 891, 904 (2005); *Pueblo v. 632 Metros Cuadrados*, 74 DPR 961, 970-971 (1953). Es en ese momento, y no con la resolución del tribunal que ordena la investidura de título en el Estado, que el gobierno adviene titular del bien expropiado. *Pueblo v. Registrador*, 70 DPR 260, 263 (1949).

Una vez el titular o dueño de la propiedad es notificado del procedimiento de expropiación, éste puede presentar una contestación y presentar aquellas defensas y objeciones que tenga sobre el fin público de la expropiación o sobre la cuantía declarada como justa compensación. 32 LPRA secs. 2905, 2907 y 2914; *Amador Roberts v. ELA*, 191 DPR 268 (2014); *Municipio de Guaynabo*, 180 DPR a la pág. 217, citando a *ACT v. 780,6141m2*, 165 DPR a la pág. 133; Véase, además, *E.L.A. v. Fonalledas Córdova*, 84 DPR 573, 579 (1962).

Destacamos que el título que adquiere el Estado mediante la investidura **es uno nuevo** que se deriva de su poder de soberano, **por lo que todo derecho anterior que gravase el inmueble queda extinguido**. *Iñesta,* 165 DPR a la pág. 905*; ACT v. 780.6141m²,* 165 DPR a la pág. 131 (2005) (Énfasis provisto). También quedan extinguidas aquellas "cargas constituidas durante la tramitación del expediente expropiatorio, o sea, en el periodo de tiempo comprendido entre su inicio y la ocupación de la cosa o bien por el expropiante". *Iñesta,* 165 DPR a la pág. 906*,* citando a F. Pera Verdaguer*, Expropiación Forzosa,* Ed. Bosch, Barcelona, 1970, 2da ed., pág. 72. Tales gravámenes se transfieren al fondo estimado para la justa compensación, el cual sustituye al inmueble en lo que respecta a las reclamaciones del dueño anterior y de los acreedores. *E.L.A. v. Registrador,* 111 DPR 117, 120 (1981); *ACT v. 780.6141m², supra.* Es de ese fondo que las partes con interés recobran. *Iñesta,* 165 DPR a la pág. 905.

La Ley de Expropiación también dispone que el procedimiento es de naturaleza *in rem,* por lo que el mismo se insta contra la propiedad. *Iñesta,* 165 DPR a la pág. 903; *E.L.A. v. Registrador, supra*; *Pueblo v. McCormick,* 78 DPR 939, 945 (1956); *Pueblo v. 632 Metros Cuadrados,* 74 DPR 961, 970 (1953). Por esta razón, la demanda se insta en contra de los dueños de la propiedad, sus ocupantes y todas las demás personas con derecho o interés sobre la propiedad, "hasta donde sea posible al demandante identificarlo", para fines del derecho que estos puedan tener sobre la justa compensación o daños compensables. 32 LPRA sec. 2905; *Iñesta, supra.*

III.

Al ejercer nuestra función revisora, le debemos gran respeto y deferencia a las determinaciones de hechos que hace el

juzgador de hechos, en particular a aquellas que descansan sobre su apreciación de la credibilidad de testigos. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-772 (2013); *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011). Es dicho juzgador (en este caso, el TPI) quien está en mejor posición para evaluar la prueba, ya que tiene la oportunidad de escuchar a los testigos mientras declaran y de observar su comportamiento. *Íd*; *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009); *López v. Dr. Cañizares*, 163 DPR 119, 135 (2004).

Por lo general, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia. *E.L.A. v. S.L.G. Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

Los foros apelativos solo podemos intervenir con la apreciación de la prueba oral que haga el juzgador de los hechos cuando éste haya actuado con pasión, prejuicio o parcialidad, o haya incurrido en un claro error al aquilatarla. *Dávila Nieves,* 187 DPR a la pág. 771; *González Hernández,* 181 DPR a las págs. 776-777; *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011); *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987). Se podrá intervenir cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando la apreciación de esta se distancia "de la realidad fáctica o sea inherentemente imposible o increíble". *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009). Además, se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en

prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández,* 181 DPR a la pág. 777.

Por otro lado, la norma en torno a la evaluación y suficiencia de la prueba figura en la Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110. La Regla 110 permite que un hecho quede demostrado mediante evidencia directa, indirecta o circunstancial. De acuerdo con el inciso (h) de la Regla 110 de Evidencia, *supra,* evidencia directa es aquélla que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestre el hecho de modo concluyente. En lo que respecta a la prueba oral, **la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho**, salvo que otra cosa se disponga por ley. Inciso (d), Regla 110 de Evidencia, *supra.*

IV.

El Artículo 1802 del Código Civil[3] establece que el que por acción u omisión cause daño a otro, mediando culpa o negligencia, estará obligado a reparar el daño causado. 31 LPRA sec. 5142. Las acciones bajo el Artículo 1802 proceden cuando se viola un "deber general de corrección en relación con los demás ciudadanos [que] es requisito indispensable para la convivencia social ordenada." *Ocasio Juarbe v. Eastern Air Lines,* 125 DPR 410, 418 (1990).

Para que prospere una reclamación en daños y perjuicios al amparo del Artículo 1802, se requiere que la parte demandante pruebe los siguientes tres elementos: (1) un acto o una omisión culposa o negligente; (2) relación causal entre el acto o la omisión culposa o negligente y el daño ocasionado; y (3) el daño real

---

[3] Se hace referencia al Código Civil de 1930 por estar vigente a la fecha de los hechos acontecidos en este caso.

causado al reclamante. *López v. Porrata Doria*, 169 DPR 135, 150 (2006).

El concepto de culpa o negligencia se refiere a "la falta de debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto [o la omisión de un acto] que una persona prudente habría de prever en las mismas circunstancias". *Valle v. ELA*, 157 DPR 1, 18 (2002). La negligencia por omisión supone la existencia de un deber jurídico cuyo cumplimiento hubiese evitado el daño. En cuanto al requisito de relación causal, el estándar aplicable es el de causalidad adecuada; ésta se define como "la condición que ordinariamente produce el daño, según la experiencia general". *Porrata Doria*, 169 DPR a la pág. 152.

Por otra parte, el daño se compone de todo menoscabo material o moral que sufre una persona en sus bienes, propiedad o patrimonio, por el cual otra persona ha de responder. *García Pagán v. Shiley Caribbean*, 122 DPR 193, 205-206 (1988). Es decir, el menoscabo puede infligirse en los bienes vitales naturales, la propiedad o el patrimonio del perjudicado. *Nieves Díaz v. González Massas*, 178 DPR 820, 845 (2010). El daño sufrido debe ser real y palpable, no vago o especulativo. *Soto Cabral v. ELA*, 138 DPR 298 (1995).

En cuanto a causalidad, rige aquí la doctrina de la causalidad adecuada, la cual dispone que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Nieves Díaz v. González Massas*, 178 DPR 820, 844 (2010). Por su parte, la previsibilidad que exige el ordenamiento no es de toda posible consecuencia de un acto u omisión sino de aquello que sea razonablemente previsible. En otras palabras, el deber de anticipar y prever los daños no abarca todo riesgo imaginable;

sólo se relaciona con riesgos que una persona prudente y razonable hubiese anticipado. *Porrata Doria*, 169 DPR a la pág. 171. Una persona prudente y razonable es aquella que actúa con el grado de cuidado, diligencia, vigilancia y precaución que exigen las circunstancias. *Nieves Díaz*, 178 DPR a la pág. 844.

La dificultad en la evaluación de los daños es mayor con respecto a la compensación por angustias y sufrimientos mentales, pues son intangibles. Se incluyen bajo este concepto diversas categorías de daños, tales como daño emocional, ansiedad, pérdida de afecto y otros daños similares de naturaleza intangible. B. Dobbs, *The Law of Torts*; Vol. 2, West Group. St. Paul Minn., 2001, pág. 821. Véase, además, A. J. Amadeo Murga, *El Valor de los Daños en la Responsabilidad Civil*, T. I, Ed. Esmaco, 1997, págs. 220 y subsiguientes. No basta una pena pasajera, sino que deben probarse sufrimientos y angustias morales profundas. *Moa v. ELA*, 100 DPR 573, 587 (1972).

## V.

Es mandatoria la imposición de costas a la parte vencida. *Montañez v. U.P.R.*, 156 DPR 395, 422-423 (2002). Es decir, una vez presentado oportunamente el memorando de costas, el tribunal deberá determinar cuáles gastos fueron necesarios y razonables y conceder las mismas a la parte victoriosa. *J.T.P. Dev. Corp. v. Majestic Realty Corp.*, 130 DPR 456, 461 (1992).

Ahora bien, son costas los gastos necesariamente incurridos en la tramitación de un pleito o procedimiento, que un litigante debe reembolsar a otro por mandato de ley o por determinación discrecional del juez. Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1; *J.T.P. Dev. Corp.*, 130 DPR a la pág. 460. Véase, además, R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2010, sec. 4201, pág. 381. Así pues, la razón de ser de esta norma es

resarcir a la parte que resultó victoriosa de los gastos necesarios y razonables incurridos con motivo del pleito y penalizar la litigación viciosa. *Garriga Jr. v. Tribunal Superior*, 88 DPR 245, 248-249 (1963).

VI.

Luego de una cuidadosa revisión del récord, incluida la transcripción estipulada de la prueba oral, concluimos que procede confirmar la Sentencia. Veamos.

Surge inequívocamente que en el pleito de expropiación que promovió el Municipio no se incluyó o reconoció la existencia de una servidumbre o franja de terreno entre las propiedades de las partes. Por consiguiente, el título que adquirió el Municipio sobre el Lote 6 fue uno nuevo, con lo cual quedó extinto todo derecho que gravase dicho predio, incluida una posible servidumbre de paso o una medianería.[4] Por tanto, actuó correctamente el TPI en cuanto a los linderos y cabida del Lote 6 y, por ende, no le asiste la razón a los Demandantes al indicar que los Demandados perturbaron su "posesión" de una franja de terreno cuando construyeron una verja en el frente de su propiedad por una cuestión de seguridad.[5]

Nuestra conclusión se fortalece al advertirse que, a pesar de que el Municipio fue traído al pleito de referencia por los Demandados, ninguna de las partes hizo alegación en contra de este en cuanto a que no realizó esfuerzos razonables en identificar e incluir a todas las partes con interés legítimo en el caso de expropiación. Los Demandantes tampoco incluyeron al Municipio en la *Demanda* original o en la enmendada. Incluso, negaron categóricamente tener interés en impugnar o invalidar

---

[4] Puntualizamos que nuestro vigente Código Civil recoge este principio y menciona la expropiación forzosa como una de las causas de extinción de las servidumbres. Artículo 964 del Código Civil, 31 LPRA sec. 8561.
[5] Transcripción oral de la prueba (TPO), Tomo II, pág. 178, líneas 1-19.

el proceso de expropiación, mediante el cual el Municipio adquirió y luego vendió el Lote 6 a los Demandados.[6] Precisamente por ello, en la *Sentencia Parcial* de 8 de abril de 2022, mediante la cual se desestimó la *Demanda Contra Tercero* instada contra el Municipio, el TPI destacó que ninguna de las partes le imputó al Municipio dejar de efectuar esfuerzos razonables en el procedimiento de expropiación y consignó que ambas partes entendieron que en el pleito ya se encontraban acumuladas las partes indispensables.[7]

En vista lo anterior, aun bajo la premisa de que alguna vez hubo una servidumbre entre las propiedades,[8] lo cierto es que, durante la expropiación del Lote 6, la misma no habría sido reconocida o preservada.  Según arriba expuesto, al constituirse un nuevo título, independiente del anterior, todas las cargas sobre el anterior título desaparecen.

Por su parte, aunque la pared del edificio de los Demandantes no es medianera, la misma tampoco es lindero de su propiedad.  El TPI correctamente determinó que la pared del edificio de los Demandantes estaba dentro del predio de estos. Por consiguiente, la pared no puede ser el lindero de la propiedad de los Demandados y estos no pueden adosar estructura alguna a dicha pared, sin el consentimiento previo de los Demandantes. Es decir, el lindero llega hasta la pared, pero no la incluye.  Otra conclusión es improcedente, toda vez que el Municipio no podía venderle a los Demandados algo que no le pertenecía, entiéndase,

---

[6] Véase, *Oposición de los Demandantes a la Moción para Desestimar Presentada por el Municipio Autónomo de Bayamón y Reacción de los Demandantes a la Contestación de los Demandados y Demandantes Contra Tercero a la Moción para Desestimar del Municipio de Bayamón*.  Entrada 98 de SUMAC, pág. 16.

[7] Véase, *Sentencia Parcial* de 8 de abril de 2022, Entrada 103 de SUMAC, pág. 17.

[8] Exhibits estipulados conjuntos 5, 13(a), 13(b) y 13(d).  Destacamos que el Lcdo. Andrés Díaz Nieves declaró que su familia lograba acceso a la "franja de terreno" para darle mantenimiento a la pared de su edificio, por la parte del negocio (restaurante) de los dueños originales del Lote 6, Don Humberto Zapata y Doña Primitiva Martínez, TPO Tomo I, pág. 70, líneas 4-20.

la pared del edificio de los Demandantes. Por consiguiente, según concluyó el TPI, los Demandados deben separar o remover, a su costo, la verja y la plataforma. Asimismo, deberán proveerle acceso a los Demandantes para que le den mantenimiento a la pared de su edificio.

De otra parte, no nos persuade el planteamiento de los Demandantes en cuanto a que los Demandados no presentaron prueba suficiente de los daños materiales y emocionales que sufrieron cuando los Demandantes hicieron un desagüe en la parte superior de su edificio, lo cual provocó inundaciones en el patio de los Demandados cada vez que llovía. Para que se conceda una indemnización por daños, no es indispensable que se presente prueba documental o pericial. Una persona que ha sufrido daños materiales o morales puede declarar sobre ello. Le corresponde al TPI valorar dicho testimonio.

En el caso de autos, los Demandados declararon que, cuando se mudaron a su propiedad, las lluvias no causaban inundaciones en el patio.[9] Expusieron que fue después que los Demandantes hicieron el desagüe en el tercer piso de su edificio que el patio se le inundaba cuando llovía y se le socavó el terreno y la residencia[10]. Añadieron que, para evitar la erosión del terreno, compraron y echaron gravilla en el área que se inundaba, hicieron un desagüe y se tuvo que construir una terraza de cemento.[11] Además, los Demandados aseveraron que la situación les causó estrés, llanto, ansiedad, problemas para conciliar el sueño, ausencias en el trabajo, un gasto económico[12]

---

[9] TPO, Tomo II, pág. 239, líneas 5-9.

[10] TPO, Tomo II, pág. 185, líneas 3-6 y líneas 20-22; pág. 239, líneas 10-21; pág. 240, líneas 1-2.

[11] Íd., de la pág. 190, línea 14 a la pág. 191, línea 8; TPO Tomo III, pág. 75, líneas 16-21 y 24-25; pág. 76, líneas 1-8.

[12] El señor Luis R. Gómez Olaya, codemandado, declaró que obtuvo un préstamo de $20,000.00 de los cuales se usaron $15,000.00 para construir la terraza de cemento y $5,000 para construir un "murito". TPO, Tomo III, pág. 103, líneas 7-16; pág. 110, líneas 16-23.

significativo y la necesidad de tomar terapias.[13]  Como vemos, los Demandados presentaron prueba oral suficiente en cuanto a los daños materiales y emocionales que sufrieron.  Nada surge de la prueba desfilada en el juicio que nos permita concluir que el TPI actuó con pasión, perjuicio, parcialidad o error al darle crédito a lo declarado por los Demandados en cuanto a los daños sufridos y la causa de los mismos.

Finalmente, no se justifica nuestra intervención con la concesión de costas a favor de los Demandados.  Los Demandados resultaron victoriosos en la totalidad de su reclamación por vía de la *Reconvención* sobre daños y perjuicios. Por consiguiente, de acuerdo con la Regla 44.1 de las de Procedimiento Civil, *supra,* procede la concesión de costas a su favor.  El hecho de que se les ordenara a los Demandados separar la plataforma y la verja de la pared del edificio de los Demandantes no equivale a concluir que no fueron victoriosos en la totalidad de su reclamación sobre responsabilidad extracontractual de los Demandantes.

VII.

Por los fundamentos que anteceden, se confirma la *Sentencia Enmendada* apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[13] Íd., de la pág. 198, línea 23 a la pág. 200, línea 9; TPO, TOMO III, pág. 77, líneas 8-18.